UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT HERNANDEZ, | No. C 07-1287 MHP (pr) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| ROBERT AYERS, | |
| Respondent. | |

## INTRODUCTION

Albert Hernandez, a California prisoner, filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge a prison disciplinary decision. This matter is now before the court for consideration of the merits of the petition. For the reasons discussed below, the petition will be denied.

## BACKGROUND

Hernandez is in custody serving a sentence of 25 years to life for a 1980 conviction for first degree murder, robbery, first degree burglary, and assault with force likely to cause great bodily injury. His habeas petition does not challenge that conviction, but instead challenges a 2005 prison disciplinary decision that resulted in a time credit forfeiture. The only claims remaining for adjudication are Hernandez's claims that the disciplinary decision violated due process because it was not supported by sufficient evidence and because he was not allowed to call two inmate witnesses.

On December 27, 2004, Hernandez was asked to provide a urine sample after drug paraphernalia was found in the area in front of his cell during a cell search. On January 5, 2005, the laboratory result of the urine test was received; it showed that Hernandez tested positive for methamphetamine and amphetamine. A CDC-115 rule violation report was issued to Hernandez that day charging him with possession of a controlled substance.

Two disciplinary hearings were held. The first one occurred on February 6-7, 2005. Staff witnesses Gonzales and Lelis testified pursuant to Hernandez's request. However, the two inmate-witnesses Hernandez requested, Butler and Andrade, did not participate in the hearing because they had paroled from prison. Hernandez was found guilty of possession of a controlled substance. He filed an inmate appeal; his appeal was partially granted at the second level because the hearing officer failed to call the inmate-witnesses or document the attempt to do so or to deny them. The inmate appeal decision required prison officials to re-issue the CDC-115 and hold a new hearing.

The CDC-115 was re-issued. Hernandez requested and received an investigative employee. On April 27, 2005, correctional officer ("C/O") Grace, the investigative officer, interviewed Hernandez, who again wanted parolees Butler and Andrade. On April 28, 2005, C/O Grace contacted Butler's parole agent and left a message for the agent to contact Grace so he could locate Butler or set up a telephone interview with Butler. As of the hearing on April 29, 2005, Butler's parole agent had not provided the necessary information. C/O Grace obtained parolee Andrade's telephone number from Andrade's parole agent and contacted him. C/O Grace interviewed Andrade on the telephone on April 28. Andrade told C/O Grace he did not remember whether he was present when Hernandez gave his urine sample.

On April 30, 2005, the new hearing was held on the CDC-115, and Hernandez was again found guilty of possession of a controlled substance. The hearing officer noted on the record that parolee Andrade had been interviewed by investigative officer Grace and had stated that he did not remember whether he was present when Hernandez provided his urine sample. The hearing officer also noted that attempts to reach parolee Butler had been unsuccessful. The hearing officer wrote that the evidence supporting his finding of guilt

2

consisted of the information in the incident package, substance abuse testing sheet, and laboratory report. Specifically, the sample was collected after drug paraphernalia was found in front of Hernandez's cell, Hernandez voluntarily submitted a urine sample, Hernandez was not taking any medication that would cause him to test positive for amphetamines or methamphetamine, the positive drug test, and there was an absence of evidence to support Hernandez's assertion that the urine test was not done pursuant to standard institutional procedures. The discipline imposed upon the finding of guilt was a forfeiture of 150 days of time credits (later reduced to 130 days), a year of mandatory random drug testing, and a 90-day loss of visiting privileges followed by 90 days of non-contact visits.

Before filing this action, Hernandez filed state habeas petitions. The Marin County Superior Court rejected Hernandez's petition for failure to establish a prima facie case for relief. The California Court of Appeal denied Hernandez's petition after respondent conceded that the credit forfeiture should have been 130 rather than 150 days and corrected that problem. The California Supreme Court summarily denied Hernandez's habeas petition.

## DISCUSSION

A.  Merits Of The Petition

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams (Terry) v. Taylor, 529 U.S. 362 (2000).

An inmate in California is entitled to due process before being disciplined when the discipline imposed will inevitably affect the duration of his sentence. See Sandin v. Conner,

3

1 515 U.S. 472, 484, 487 (1995).  The process due in such a prison disciplinary proceeding
2 includes written notice, time to prepare for the hearing, a written statement of decision,
3 allowance of witnesses and documentary evidence when not unduly hazardous, and aid to the
4 accused where the inmate is illiterate or the issues are complex.  Wolff v. McDonnell, 418
5 U.S. 539, 564-67 (1974).  The Due Process Clause only requires that prisoners be afforded
6 those procedures mandated by Wolff and its progeny; it does not require that a prison comply
7 with its own, more generous procedures.  See Walker v. Sumner, 14 F.3d 1415, 1419-20
8 (9th Cir. 1994).

9 The revocation of good-time credits does not comport with the minimum requirements
10 of procedural due process in Wolff unless the findings of the prison disciplinary decision-
11 maker are supported by some evidence in the record.  Superintendent v. Hill, 472 U.S. 445,
12 454 (1985).  There must be "some evidence" from which the conclusion of the decision-
13 maker could be deduced.  Id. at 455.  An examination of the entire record is not required nor
14 is an independent assessment of the credibility of witnesses or weighing of the evidence.  Id.
15 The relevant question is whether there is any evidence in the record that could support the
16 conclusion reached by the disciplinary decision-maker.  Id.  This standard is considerably
17 lower than that applicable in criminal trials.  Id. at 456.  The Ninth Circuit additionally has
18 held that there must be some indicia of reliability of the information that forms the basis for
19 prison disciplinary actions.  Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987).

20 The evidence relied upon by the hearing officer in finding Hernandez guilty of the
21 charge of possession of a controlled substance easily meets Superintendent v. Hill's "some
22 evidence" standard.  Hernandez gave a urine sample that tested positive for methamphet-
23 amine and amphetamine.  Hernandez protested during the disciplinary proceedings about
24 perceived imperfections in the testing procedures, but did not show at the hearing or here that
25 any imperfections so compromised the urine test as to make the results worthless.  The fact
26 that Hernandez tested positive for methamphetamine and amphetamine, plus the absence of
27 any medication that might cause a false positive, provided more than some evidence to
28 support the finding that he was guilty of being in possession of a controlled substance.

4

1 Hernandez also failed to establish a due process violation based on the absence of
2 witnesses Butler and Andrade. First, Hernandez offers no explanation as to why he wanted
3 either of the former inmates to appear at his hearing, such as the expected substance of the
4 testimony from either witness that would have been helpful to him.  The absence of any
5 information about the value of these former inmates' testimony is particularly glaring in light
6 of the Marin County Superior Court's decision pointing out this very problem when it denied
7 Hernandez's habeas petition.  See Resp. Exh. 11, p. 3.  Second, officials did not actually
8 refuse to contact either of these parolees.  Cf. Serrano v. Francis, 345 F.3d 1071, 1079-80
9 (9th Cir. 2003), cert. denied. 543 U.S. 825 (2004) (due process violated where hearing officer
10 failed to offer a convincing explanation for why he did not allow witnesses and failed to
11 follow state regulation requiring him to document his reasons for refusing to grant inmate's
12 request for a witness).  Former inmate Butler could not be located, although prison officials
13 documented reasonable efforts to contact him through his parole officer.  Former inmate
14 Andrade was located and interviewed by telephone, but had no recollection of Hernandez's
15 urine test.  Due process was not violated when prison officials did not arrange for the
16 presence (by telephone or in person) at the hearing of the former inmate who did not even
17 recall the incident in question.  The inmate's right to present a defense is not absolute and
18 prison officials retain "the necessary discretion to keep the hearing within reasonable limits."
19 Wolff, 418 U.S. at 566.  Hernandez has not shown that his right to due process was violated
20 when these two former inmates did not testify at his hearing.

21 Hernandez's right to due process was not violated by prison officials' decision to find
22 him guilty of possession of a controlled substance and to assess him a credit forfeiture of 130
23 days.  He is not entitled to the writ of habeas corpus.

24 B.     Timeliness Of Petition

25 "A 1-year period of limitation shall apply to an application for a writ of habeas corpus
26 by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1).
27 A habeas petition by a state prisoner challenging a decision of an administrative body, such
28 as the disciplinary decision here, is covered by the statute and the limitations period starts to

5

run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(D); <u>Shelby v. Bartlett</u>, 391 F.3d 1061, 1066 (9th Cir. 2003).

Respondent contends that Hernandez missed the statute of limitations deadline by seven days. Although Hernandez fails to contest this assertion, there appear to be two problems with it. First, respondent uses the hearing date of April 30, 2005, as the date on which the factual predicate of the claim could have been discovered, but the CDC-115 with the written decision was not given to Hernandez until twelve days later on May 12, 2005. <u>See</u> Resp. Exh. 8. The record does not establish that Hernandez was informed of the disciplinary decision and credit loss on April 30 rather than May 12. Assuming that he did not learn of the decision until the written decision was handed to him on May 12, his petition was timely filed. Second, respondent fails to make allowance for the prisoner mailbox rule, which requires the court to deem a <u>pro se</u> prisoner's petition filed as of the date he gives it to prison officials to mail to the court rather than the date on which it is stamped "filed" at the court. <u>See</u> <u>Stillman v. Lamarque</u>, 319 F.3d 1199, 1201 (9th Cir. 2003). Here, that means that the federal petition was deemed filed five days earlier than respondent asserts: it was deemed filed when mailed on March 1, 2007 (as evidenced by the postmark) rather than when it was stamped "filed" on March 6, 2007. Allowing for these extra 12- and 5-day periods, the petition was filed before the expiration of the one-year limitations period.

## CONCLUSION

The petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: June 3, 2008

Marilyn Hall Patel
United States District Judge